IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00955-PAB-KLM

JOHN D. HINDORFF,

      Plaintiff,

v.

GSCRP, INC., a Colorado corporation and
PAUL M. WEISSMANN, Boulder County Public Trustee,

      Defendants.

---

## ORDER

---

This matter is before the Court on plaintiff John D. Hindorff's Motion for a
Preliminary Injunction [Docket No. 7].  The Court held a hearing on the motion on June
3, 2013.

## I.  FINDINGS OF FACT

Upon review of plaintiff's motion and the testimony and exhibits admitted during
the hearing, the Court makes the following findings:

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331
based on plaintiff's claims under the Truth in Lending Act ("TILA") 15 U.S.C. § 1601 *et
seq.*, and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 639.
Docket No. 1 at 13-18.

2.      Venue is proper pursuant to 28 U.S.C. § 1391 because the property at
issue is located within this District.

3.      Plaintiff is the owner of real property located at 1826 Faith Place,

Longmont, CO 80501 (the "Residence") as identified by the Deed of Trust.  *See* Docket No. 1-1 at 16-19 (Pl. Ex. J).[1]

4.      Before July 2011, plaintiff had two previous mortgages on the Residence that were both subject to foreclosure proceedings.  On July 19, 2011, plaintiff refinanced his mortgage with defendant GSCRP, Inc.  Plaintiff executed a Promissory Note in the amount of $90,000 in favor of GSCRP.  *See* Docket No. 1-1 at 14-15 (Pl. Ex. I); *see also* Docket No. 1-1 at 7 (Pl. Ex. C).  The Note was secured by a Deed of Trust assigning a security interest in the Residence.  *See* Docket No. 1-1 at 16-19 (Pl. Ex. J).  The terms of the Note required that plaintiff provide monthly interest payments in the amount of $900.00 starting on August 25, 2011, with the principal and final interest payment in the amount of $90,900 being due on July 25, 2012.  *See id.*

5.      Plaintiff testified that, on the date he closed on the loan, defendants did did not disclose several federally mandated documents, such as a copy of the Note, a copy of the deed of trust, and a complete copy of the HUD-1 statement.  Docket No. 1-1 at 11-13 (Pl. Exs. H, G).  Plaintiff also stated that defendants did not disclose the fact that the loan included a prepayment penalty and the interest on the loan exceeded the applicable yield of securities issued by the Treasury by more than eight points.  Moreover, plaintiff testified that he received the 3-day notice of right to rescind on the day of closing, rather than in advance.  Docket No. 1-1 at 21 (Pl. Ex. L).  However, Frank Brock, the manager of Tri-State Mortgage, LLC, testified that, on July 1, 2012,

---

[1]The references to exhibits admitted during the hearing are identified herein as "Pl. Ex. ___" or "Def. Ex. ___ ."

eighteen days before closing, plaintiff received and signed the Section 32 disclosure,[2] Docket No. 1-1 at 8 (Pl. Ex. D), the TILA disclosure statements, Docket No. 1-1 at 7 (Pl. Ex. C), and the "Good Faith Estimate." Docket No. 1-1 at 1 (Pl. Ex. A). Moreover, Mr. Brock testified that consumers are typically provided the 3-day notice of the right to rescind on the day the loan documents are signed, after which consumers have three days to rescind the contract before the loan is disbursed on the fourth day following loan signing.

6. Plaintiff testified that he believes his loan is subject to HOEPA's disclosure requirements because the loan's maturation date of August 25, 2012 is thirteen months after the closing date of July 19, 2011. Docket No. 1-1 at 16 (Pl. Ex. J). However, Mr. Brock testified that, based on the "Good Faith Estimate," plaintiff's loan qualifies as a twelve month interest only loan. Docket No. 1-1 at 1 (Pl. Ex. A).

7. After closing on the loan, plaintiff made four interest payments on the Note. In December 2011, plaintiff notified GSCRP that he was having difficulty making the required payments on the Note. Plaintiff made no payments on the Note after December 2011.

8. Gordon S. Carvill, president of GSCRP, testified that, after plaintiff told Mr. Carvill about plaintiff's inability to make payments on the Note in December 2011, Mr. Carvill did not hear from plaintiff again until September 28, 2012. Mr. Carvill

---

[2]Mr. Brock testified that the Section 32 disclosure is a federally mandated disclosure form for high cost loans that require a person to make interest payments that "balloon" at the time the note is due.

testified that plaintiff did not respond to the letters he sent plaintiff on April 16, 2012 and

June 6, 2012 regarding plaintiff's failure to make payments on the Note.

9.     On September 26, 2012, plaintiff mailed defendants GSCRP and Tri-

State a letter purporting to exercise his rescission rights under TILA.  Docket No. 1-1 at

22-27 (Pl. Ex. M).  In the letter, plaintiff attached defendants' allegedly defective notice

of the right to rescind, made a Qualified Written Request ("QWR"),[3] and requested

copies of all documents related to the loan, including the application for the loan,

payments defendants received on the loan, finance charges, closing costs, closing

fees, principal payments, foreclosure costs, attorneys' fees, interest, and late fees.

Docket No. 1-1 at 22-29 (Pl. Ex. M).  On September 27, 2012, plaintiff's rescission

notice was recorded in the real property records for Boulder County, Colorado.  Docket

No. 1-1 at 49-52 (Pl. Ex. O).  On September 28, 2012, plaintiff sent a copy of the letter

exercising his right to rescind to Richard O. Schroeder, attorney for GSCRP.  Docket

No. 1-1 at 30-43 (Pl. Ex. N).

10.     GSCRP responded to plaintiff's QWR with three letters dated October 9,

2012, Docket No. 24-8 (Def. Ex. H), October 24, 2012, Docket No. 24-9 (Def. Ex. I),

and November 13, 2012.  Docket No. 24-10 (Def. Ex. J).  Plaintiff received the October

9 letter, but testified that the HUD-1 form he received from GSCRP was incomplete.

Plaintiff also testified that the November 13, 2012 letter did not comply with TILA

---

[3]A qualified written request is a written correspondence that a borrower of a federally related mortgage loan sends to the servicer of a loan under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., that includes a statement of the reasons the borrower believes that the loan account is in error or includes a request from the borrower that the servicer provide information about the loan.  12 U.S.C. § 2605(e)(B).

because the total sum requested by GSCRP was not an accurate accounting of the money due on the loan because it did not deduct finance charges, refund any interest payments, or refund any other deductible charges. Moreover, plaintiff testified that GSCRP did not take any steps to terminate the security interest on the Residence.

11.     On December 7, 2012, GSCRP commenced foreclosure with the Boulder County Public Trustee. On February 19, 2013, the Boulder County District Court issued an order authorizing sale of the property. Docket No. 24-3 (Def. Ex. C). Although the foreclosure sale of the property has been postponed, defendant GSCRP can reinitiate such sale at any time.

12.     As a result of these events, plaintiff filed a verified complaint [Docket No. 1] alleging that defendants GSCRP and Tri-State violated TILA and the Colorado Consumer Equity Protection Act ("CCEPA"), Colo. Rev. Stat. § 5-3.5-101 *et seq*. In addition, plaintiff brought a claim against GSCRP for violations of HOEPA. Plaintiff served defendants GSCRP, Inc. and Paul M. Weissmann, Boulder County Public Trustee, with the complaint in this case, but did not serve defendant Tri-State. *See* Docket Nos. 8-10. On May 29, 2013, plaintiff dismissed Tri-State from these proceedings. Docket Nos. 27-28. Defendant Paul M. Weissmann has indicated that he takes no position on plaintiff's request in this motion. Docket No. 23. Mr. Weissman did not appear at or participate in the preliminary injunction hearing.

13.     On April 19, 2013, plaintiff filed the present motion, seeking to enjoin the foreclosure sale of the Residence.

5

## II.  ANALYSIS

A party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) a likelihood that the movant will suffer irreparable harm, (3) that the balance of the equities tips in the movant's favor, and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).  The Tenth Circuit has made it clear that "because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

Morever, because "the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until trial on the merits can be held," the Tenth Circuit has identified the following three types of specifically disfavored preliminary injunctions: "(1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005).  Injunctions that disturb the status quo alter the parties' existing relationship.  *Id.*  "The status quo is not defined by the parties' existing legal rights; it is defined by the reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights."  *Id.* at 1259.  In this case, plaintiff seeks an order restraining "GSCRP, Inc. and Defendant, Paul M. Weissmann . . . from conducting a sale" of his family home pending resolution of this case on the merits.  Docket No. 7 at 28.  The order

authorizing sale issued on February 13, 2013, and plaintiff did not file this case until

April 15, 2013. GSCRP postponed the sale due to this case. Thus, the "last peaceable

uncontested status existing between the parties" before this dispute arose reveals an

actual pending sale of the property. *Schrier*, 427 F.3d at 1260. As a result, plaintiff's

requested relief would alter the status quo and not preserve it. Consequently, plaintiff

must make a heightened showing of the four preliminary injunction factors. *O Centro*

*Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1177 (10th Cir.

2003).

      As a threshold matter, the Court finds that it has jurisdiction over this case.

Although a state court has authorized the sale of the Residence pursuant to Rule 120 of

the Colorado Rules of Civil Procedure, the Tenth Circuit held in *In re Miller*, 666 F.3d

1255, 1262 (10th Cir. 2012), that the *Rooker-Feldman* doctrine does not preclude a

district court from entertaining collateral attacks from state court decisions granting

orders authorizing sales. As Rule 120 notes, "granting of [a Rule 120 motion] shall be

without prejudice to the right of any person aggrieved to seek injunctive or other relief in

any court of competent jurisdiction." Colo. R. Civ. P. 120(d). Plaintiff testified that the

state court refused to consider his TILA argument during the Rule 120 hearing and

therefore he asserts his claims as a collateral attack of those proceedings. *See also*

Docket No. 7 at 14, ¶ 37. The Court finds that plaintiff's TILA arguments are properly

raised in this case. *See Plymouth Capital Co., Inc. v. Dist. Court of Elbert Cnty.*, 955

P.2d 1014, 1017 (Colo. 1998) (noting that Rule 120 proceedings relate to narrow issues

and "[i]f the Rule 120 court enters an order of sale, the Debtors may then present

evidence showing a likelihood of success on the merits of their defenses in support of injunctive relief in the companion case"); *Rosenfield v. HSBC Bank, U.S.A.*, 681 F.3d 1172, 1190 (10th Cir. 2012) (noting that Rule 120 hearings are "designed to address, in summary fashion, issues related *specifically to the existence of a default*," are not entitled to "preclusive effect," and "do not appear to contemplate any adjudication of a TILA rescission claim") (emphasis in original; internal citations omitted).

### A.   Likelihood of Success on the Merits

Although plaintiff raises claims pursuant to various statutes, the thrust of plaintiff's preliminary injunction argument is that defendants violated TILA's notice requirements, thereby triggering his right to rescission.   *See generally* Docket No. 7. Plaintiff argues that he is entitled to an injunction because he will lose his statutory right to rescission if the foreclosure sale is not enjoined.  *Id*. at 16, ¶ 42.  Additionally, plaintiff contends that, until defendants comply with the disclosure requirements of TILA, he is entitled to remain on the property and does not have to return the loan proceeds to defendants.  *Id*. at 15-16, ¶ 41.  Moreover, plaintiff claims that the contract became void automatically upon his written notice to defendants that he sought to rescind the loan. *Id*. at 9-10, ¶ 23.

#### 1.   TILA

##### a.   Notice of Right to Rescind

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer

against inaccurate and unfair credit billing and credit card practices."  15 U.S.C.

§ 1601(a).  TILA requires that creditors disclose, clearly and accurately, all material

terms of consumer credit transactions.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410,

412 (1998).  TILA provides further protection to consumers by guaranteeing that

consumers receive a three-day cooling-off period within which they may, for any reason

or for no reason, rescind credit transactions secured by a "principal dwelling."  15

U.S.C. § 1635(a); *see* 12 C.F.R. § 226.23(a)(1).

Under TILA and its implementing regulation (known as Regulation Z, which is

codified at 12 C.F.R. § 226), creditors are required to give consumers two copies of the

Notice of the Right to Rescind.  12 C.F.R. § 226.23(b)(1).  In addition, creditors must

give consumers the Notice of the Right to Rescind on a separate document that

identifies the credit transaction and "clearly and conspicuously" discloses: (1) the fact

that the creditor retains or acquires a security interest in the consumer's principal

dwelling; (2) the consumer's right to rescind the transaction; (3) a form that explains to

the consumer how to exercise the right to rescind; (4) the effects of rescission as

described in 12 C.F.R. § 226.23(d); and (5) the date the rescission period expires.  12

C.F.R. § 226.23(b)(1).  If the right to rescind is not appropriately disclosed, debtors

have up to three years after the consummation of the transaction to rescind the loan.

15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); *McKenna v. First Horizon Home Loan*

*Corp.*, 475 F.3d 418, 421 (1st Cir. 2007).

Here, it is undisputed that plaintiff did not exercise his right to rescind within three

business days of the closing.  In addition, it is undisputed that plaintiff received and

signed a Notice of the Right to Rescind on July 19, 2011. *See* Pl. Ex. L.[4] Nevertheless,

plaintiff argues that his right to rescind the loan is subject to the three year statute of

limitations because defendants' Notice of the Right to Rescind did not comply with

Regulation Z. Docket No. 7 at 14. Specifically, plaintiff claims that defendants did not

provide him with two copies of the Notice of the Right to Rescind and that defendants'

Notice of the Right to Rescind did not include disclosures about the effects of

rescission, how plaintiff should exercise his right to rescind, or the fact that defendants

acquired a security interest in the Residence. *Id.* at 13-14. Counsel for GSCRP

conceded during the hearing that defendants' Notice of the Right to Rescind did not

comply with "Regulation Z's strict requirements."

The Court finds that defendants' notice of the right to rescind failed to comply

with Regulation Z in several respects. First, the notice did not explain to plaintiff that

the transaction would result in defendants obtaining a security interest in the

Residence. 12 C.F.R. § 226.23(b)(1)(i). Second, the notice did not provide plaintiff with

a form containing defendants' place of business and did not describe how to rescind the

transaction. 12 C.F.R. § 226.23(b)(1)(iii). Third, the notice did not provide plaintiff with

---

[4]GSCRP's notice of the right to rescind is titled "Three day right of recession [sic]" and states in relevant part:

> This transaction taking place on July 19th 2011 is for a re-finance loan for John D. Hindorff. Whereas, a three day right of recession ends on midnight of July 22nd 2011. Wherein, if you have not contacted your lender, this loan will fund on the following business day, July 25th 2011. By signing below, said borrower acknowledges he has received a copy of this disclosure.

Docket No. 1-1 at 21 (Pl. Ex. L).

an explanation of the effects of rescission as described in § 226.23(d).[5]   12 C.F.R.

§ 226.23(b)(1)(iv).  Regulation Z requires that a creditor's notice be clear and

conspicuous.  Defendants' numerous violations provide no basis for the Court to find

that defendants substantially complied with Regulation Z.  Therefore, the Court finds

that plaintiff has sufficiently shown that, based on defendants' violations of Regulation

Z, he is likely to succeed on his claim that a three year extension of the statute of

limitations period applies to his right to rescind.[6]   12 C.F.R. § 226.23(a)(3); *Beach*, 523

--------

[5]The Court finds that plaintiff has failed to show a likelihood of success on the merits of his claim that an average consumer would have been confused by defendants' misspelling of the word "rescission."  *See Palmer v. Champion Mortg.*, 465 F.3d 24, 28 (1st Cir. 2006)  (adopting "the vantage point of a hypothetical average consumer – a consumer who is neither particularly sophisticated nor particularly dense"); *Rand Corp. v. Moua*, 559 F.3d 842, 845-46 (8th Cir. 2009) (TILA violations reviewed under an objective standard "regardless of whether the borrower is a trained attorney or simply an individual who had a sudden need for additional funds").  While defendants' notice is not perfect, the Court finds that the notice was more than sufficient to inform plaintiff that he had three days in which to rescind the contract and defendants' misspelling is not a deficiency that traditionally results in a violation of TILA. *Santos-Rodriguez v. Doral Mortgage Corp.*, 485 F.3d 12, 16 (1st Cir. 2007) ("Most Courts have concluded that TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice").

[6]As a result of the Court's determination of plaintiff's likelihood of success on other arguments, it is not necessary for the Court to decide whether plaintiff has shown a likelihood of success on the merits of his claim that his right to rescind may be subject to a three year statute of limitations based on defendants' failure to provide two copies of the Notice of Right to Rescind.  12 C.F.R. § 226.23(b)(1); *see Smith v. Argent Mortg. Co.*, 331 F. App'x 549, 557-58 (10th Cir. 2009) (assuming, without deciding, that plaintiff may be entitled to three year statute of limitations if he or she could prove that defendant did not provide two copies of the Notice of Right to Rescind); *Marr v. Bank of Am., N.A.*, 662 F.3d 963, 968 (7th Cir. 2011) (noting that Regulation Z is not satisfied by "some kind of substantial compliance rule . . . Two copies means two copies, not one"); *but see King v. Long Beach Mortg. Co.*, 672 F. Supp. 2d 238, 250-51 (D. Mass 2009) (noting that the extension of the statute of limitations does not apply to a lender's failure to provide two copies of the Notice of Right to Rescission because Regulation Z in 226.23(a)(3) uses the singular term "notice" and not the term "notices," which is used elsewhere in the statute to convey use of two copies).

U.S. at 411 ("when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately"); *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1142 (10th Cir. 2012).  Because plaintiff's loan transaction occurred on July 19, 2011 and plaintiff made his rescission demand on September 28, 2012 and filed this case on April 15, 2013, plaintiff's claim for rescission is not time-barred.  Accordingly, the Court finds that plaintiff has met the heightened burden required for an injunction altering the status quo.  *Schrier*, 427 F.3d at 1260.

Because the Court finds that plaintiff has shown a likelihood of success on the merits of his claim that his request for rescission is not time-barred, the Court must now determine whether plaintiff has a likelihood of success on the merits of his claim that he is entitled to rescission.

### b.  Rescission Process

Pursuant to TILA and Regulation Z, for a consumer to exercise his or her TILA right to rescind, the consumer need only notify the creditor in writing.  12 C.F.R. § 226.23(a)(2).  The purpose of rescission is to restore the status quo before the closing, whereby the creditor terminates its security interest and returns any monies paid by the debtor in exchange for the debtor's return of all disbursed funds or property interests.  15 U.S.C. § 1635(b).  When a consumer rescinds under TILA, the creditor must – within 20 calendar days after receipt of a valid notice of rescission – return "any money or property that has been given to anyone," including any finance charges

collected from the consumer.  12 C.F.R. § 226.23(d).  The creditor must also "take any action necessary to reflect the termination of [its] security interest."  12 C.F.R. § 226.23(d)(2).  Until the creditor takes the aforementioned actions, the consumer may keep the loan proceeds.  12 C.F.R. § 226.23(d)(3).  After the creditor satisfies these rescission obligations, the consumer must tender to the creditor the loan proceeds or their "reasonable value."  12 C.F.R. § 226.23(d)(3); *Sanders*, 689 F.3d at 1142.

To the extent plaintiff claims that the loan agreement became void automatically upon his written rescission notice, Docket No. 7 at 9-10, ¶ 23, the Court disagrees.  As noted by the Ninth Circuit in *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003), rescission of a credit transaction is complete only after "the creditor acknowledges that the right to rescission is available, or because [the Court] has so determined. . . . Until such decision is made, [plaintiff] ha[s] only advanced a claim seeking rescission."  *See also Am. Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007) (joining the majority of reviewing courts that find that "unilateral notification of cancellation does not automatically void the loan contract"); *Gilbert v. Residential Funding, LLC*, 678 F.3d 271, 277 (4th Cir. 2012) ("To complete the rescission and void the contract . . . [e]ither the creditor must acknowledge that the right of rescission is available and the parties must unwind the transaction amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind") (internal quotations and alterations omitted).  Here, because plaintiff's rescission notice, by itself, does not void the transaction, the Court must determine whether plaintiff is entitled to enforce his right to rescind.

It is undisputed that, on September 28, 2012, plaintiff sent a letter notifying defendants that he sought to rescind the loan transaction.[7] Pl. Ex. N.  In the letter, plaintiff requested a calculation of the amount he owed under the note less "all monies paid under the mortgage, including all finance charges, closing costs, closing fees, principal (if any), foreclosures costs, attorney fees, interest and late fees paid." *Id*. GSCRP sent three letters in response to plaintiff's notification of the cancellation of the debts.  Def. Exs. H, I, J.  On November 13, 2012, GSCRP advised plaintiff that he owed $107,406.22 under the Note, which included the principal due as of August 2, 2012, interest and penalties through November 25, 2012, escrow payments, and collection fees and costs.  Def. Ex. J.  GSCRP's letter, however, did not deduct any funds plaintiff provided in connection with the loan, such as finance charges.  12 C.F.R. § 226.23(d); *Sanders*, 689 F.3d at 1142.  Because GSCRP did not provide a proper accounting of the monies due under the loan, the Court finds that plaintiff has given defendants notice of his election of the right to rescind the transaction, yet defendants have failed to account for plaintiff's required payments under the loan.  Defendants also did not take any actions to terminate the security interest in the Residence as required by Regulation Z.  12 C.F.R. § 226.23(d)(2).  Accordingly, the Court finds that plaintiff has shown that he is likely to succeed on the merits of his claim that he has a right to rescind the loan under the heightened burden required for injunctions altering the status quo.  *Schrier*, 427 F.3d at 1260.

---

[7]Plaintiff also sent a notice of cancellation to defendant GSCRP and Tri-State Mortgage, LLC, a non-party to this case, on September 26, 2012.  *See* Pl. Ex. M.

### 2. HOEPA

Next, plaintiff alleges that defendants violated HOEPA by failing to provide the required written disclosures for high interest rate or high-fee loans.  Docket No. 7 at 5. Specifically, plaintiff argues that defendants did not disclose that the loan was subject to prepayment penalty and that the loan's interest rate exceeded the applicable yield of securities issued by the Treasury by more than eight points.

HOEPA, codified at 15 U.S.C. § 1639, was enacted as an amendment to TILA to protect consumers against various practices in connection with certain high interest rate loans.  The Act applies to high interest mortgages in which (i) the annual percentage rate ("APR") at consummation will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity and (ii) the total points and fees payable by the consumer at or before loan closing will exceed the greater of eight percent of the total loan amount or $400.  15 U.S.C. § 1602(aa); 12 C.F.R. § 226.32(a)(1).  However, HOEPA does not apply to any "reverse mortgage or temporary or bridge loan with a term of 12 months or less."  15 U.S.C. § 1639c(a)(8).

Plaintiff argues that his loan qualifies for protection under HOEPA because the promissory note states that the loan is for a period of 13 months.  The Court disagrees. As evidenced by the Note itself, plaintiff's loan was for a period of 12 months and included interest only payments until a final principal and interest payment.  *See* Docket No. 1-1 at 14-15 (Pl. Ex. I).  The terms of the Note show that plaintiff was required to make monthly payments of $900.00 beginning on August 25, 2011 and ending with a final payment of $90,900.00 on July 25, 2012 for a total of twelve months.  *See id.*  In addition, Mr. Brock testified that the applicable interest rate for his loan was calculated

15

based on a twelve month interest only loan.  Plaintiff has not sufficiently established

that his loan exceeded twelve months.  *Schrier*, 427 F.3d at 1260.  Accordingly, the

Court finds that plaintiff's loan qualifies as a twelve month temporary bridge loan.  *See*

Colo. Rev. Stat. § 5-3.5-101(1) (noting that a "Bridge loan" means temporary or

short-term financing with a maturity of less than eighteen months that requires

payments of only interest until the entire unpaid balance is due and payable).  Because

plaintiff's loan qualifies as a twelve month short term loan, plaintiff is unlikely to succeed

on the merits of his claim of a violation of HOEPA under the heightened burden

required for injunctions altering the status quo.  *Schrier*, 427 F.3d at 1260.

### 3.  RESPA

To the extent that plaintiff brings a claim under RESPA, § 2605 provides that

individuals damaged by a RESPA violation are entitled to receive actual damages, as

well as any additional damages the court may allow "in the case of a pattern or practice

of noncompliance with the requirements of this section, in an amount not to exceed

$2,000."  12 U.S.C. § 2605(f)(1)(A) & (B).  Costs and reasonable attorney fees are also

available to successful RESPA plaintiffs. 12 U.S.C. § 2605(f)(3).  None of these

remedies permit an injunction against foreclosure.  Accordingly, plaintiff has not shown

a likelihood of success on the merits of this claim that would entitle him to injunctive

relief.

### B.  Irreparable Harm

With respect to irreparable harm, a showing of "irreparable harm is the single

most important prerequisite for the issuance of a preliminary injunction."  *Dominion*

*Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).
To constitute irreparable harm, "an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted).

In order to establish irreparable harm, plaintiff must show that he has a right to remain in his home. Eviction from property that one does not own does not constitute irreparable harm. *Allen v. United Props. & Constr., Inc.*, 07-cv-00214-LTB-CBS, 2008 WL 4080035, at *18 (D. Colo. Sep. 3, 2008) (citing *Wendt v. Edward D. "Tito" Smith*, 2003 WL 21750676, at *3 (C.D. Cal. 2003)).

Plaintiff argues that, absent an injunction, he is likely to suffer irreparable harm because he will lose his right to rescission under TILA if the Residence is sold. *See* 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or *upon the sale of the property*") (emphasis added). Plaintiff also testified that, should the Court enjoin the foreclosure proceedings, he may be able to secure funding to tender at least $70,000 of the loan proceeds to GSCRP. Docket No. 7 at 85 (Pl. Ex. Q).

In *RoDa Drilling*, the Tenth Circuit noted that, when "interests involving real property are at stake, preliminary injunctive relief can be particularly appropriate because of the unique nature of the property interest." 552 F.3d at 1210. In this case, plaintiff has shown that he will suffer irreparable harm if the Court does not enjoin the foreclosure proceedings because plaintiff would lose his right to rescission should a sale of the property occur. 15 U.S.C. § 1635(f). While the issue is close given that

17

plaintiff has not shown the present ability to tender the proceeds loaned to him, the

Court finds this factor weighs slightly in favor of plaintiff given plaintiff's testimony that

he may be able to secure additional funds to pay off the loan proceeds and given that

defendant has yet to properly indicate the total amount that plaintiff would need to

tender.  *Schrier*, 427 F.3d at 1260.

### C.   Public Interest and Balance of Equities

The Court finds that the balance of equities weighs in favor of plaintiff.  Given the

multiplicity of ways in which defendants' disclosures violated Regulation Z, the public

interest is best served by furthering the Congressional purpose of assuring "meaningful

disclosure of credit terms so that the consumer will be able to compare more readily the

various credit terms available to him and avoid the uninformed use of credit, and to

protect the consumer against inaccurate and unfair credit billing and credit card

practices."  15 U.S.C. § 1601(a).  Moreover, GSCRP will not lose its security in the

property should the Court grant plaintiff a preliminary injunction.  Because the purpose

of TILA is to protect the interest of consumers with adequate notice of their rights, the

Court finds that the balance of the equities weighs in favor of plaintiff.  *Beach*, 523 U.S.

at 419.

### D.   Bond

Plaintiff argued at the hearing that the Court should not impose a bond because

defendants would not suffer any harm during the pendency of the injunction.

Defendants, on the other hand, requested that the Court impose a bond so that plaintiff

can make payments to become current on the Note, arguing that an alleged failure to

provide the requisite notice should not entitle plaintiff to reside in the property without cost.

Rule 65(c) provides that a successful applicant for a preliminary injunction post a bond or other security "in an amount that the court considers proper" for the payment of costs and damages that may be incurred by a party who is wrongfully enjoined.  Fed. R. Civ. P. 65(c).  "[T]he trial court has 'wide discretion' in setting the amount of the preliminary injunction bond."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001).

The Tenth Circuit has noted that, "[a]lthough the rescinding consumer need not plead an ability to repay the proceeds of the loan, the district court may nevertheless, in an appropriate case, use its equitable powers to protect a creditor's interest during the TILA rescission process."  *Sanders*, 689 F.3d at 1144.  Other circuit courts to have addressed this issue have also found that district courts can utilize their equitable powers to impose conditions on a consumer's right to rescind.  *See Yamamoto*, 329 F.3d at 1173 (noting that "a court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations"); *Shelton*, 486 F.3d at 820 ("when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due").

In this case, the Court finds that equitable considerations warrant imposing conditions on plaintiff's right to rescission in order to protect GSCRP's interest in recovering its principal.  *See Sanders*, 689 F.3d at 1144.  Plaintiff's previous two

mortgages on the Residence were subject to foreclosure, which partially motivated plaintiff to secure the present loan.  Additionally, plaintiff made only four of the required payments under the Note and has made no further payments on the Note in over a year.  Plaintiff did not respond to GSCRP's attempts to discuss the terms of the loan in April 2012 and June 2012.  Furthermore, although plaintiff testified that he has tried to secure funding to repay the principal amount of the loan, he did not clearly indicate that he would have an ability to tender the loan proceeds to GSCRP should the Court order rescission.  Thus, because plaintiff's ability to meet his obligations under the rescission process remains uncertain, the Court will condition plaintiff's right to rescission upon plaintiff tendering a bond to the Clerk of the Court.  *Sanders*, 689 F.3d at 1144; *Hull*, 683 P.2d at 1186; *Yamamoto*, 329 F.3d at 1173.

In this case, the Court will expedite the discovery process and set this case for trial six months from the date of this Order.  Given that defendants are likely to suffer harm through the loss of interest payments due under the Note during the pendency of the injunction, the Court will impose a bond of $5,400.00 (based on $900.00 monthly interest payments for a period of six months) to cover any potential damage to defendants as a result of a wrongfully imposed injunction.  Fed. R. Civ. P. 65(c); *Dominion*, 269 F.3d at 1158.

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Verified Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum In Support thereof [Docket No. 7] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that defendants GSCRP, Inc. and Paul M. Weissmann are hereby enjoined from starting foreclosure proceedings on the real property located at 1826 Faith Place, Longmont, CO 80501.  It is further

**ORDERED** that this preliminary injunction shall apply to the following individuals who receive actual notice of it by personal service or otherwise: defendant GSCRP, Inc.'s officers, agents, servants, employees, and attorneys; other persons who are in active concert or participation with defendant GSCRP or with his officers, agents, servants, employees, or attorneys.  It is further

**ORDERED** that this preliminary injunction shall apply to the following individuals who receive actual notice of it by personal service or otherwise: defendant Paul M. Weissmann and his officers, agents, servants, employees, and attorneys; other persons who are in active concert or participation with defendant Paul M. Weissmann or with his officers, agents, servants, employees, or attorneys.  It is further

**ORDERED** that, pursuant to Fed. R. Civ. P. 65(d), the injunction will take effect upon plaintiff John D. Hindorff posting a bond of $5400.00 into the court registry as security.  It is further

**ORDERED** that this preliminary injunction shall remain in effect until the entry of final judgment in this case.

DATED June 14, 2013.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge